**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ZORM 2009, LLC,** | : | **3:15cv35** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **JONATHAN GREENWALD,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| | |
|---|---|
| **ZORM 2009, LLC,** | : |
| **Plaintiff** | : |
| | : |
| **v.** | : |
| | : |
| **JONATHAN GREENWALD and** | : |
| **ROBERT MAYNARD,** | : |
| **Defendants** | : |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

This case is comprised of two consolidated cases, 3:15cv35 and

3:15cv67.  Each case deals with whether the individual defendants owe

sums of money to plaintiff under personal guaranties that they signed

involving two mortgages.  The plaintiff has filed for summary judgment

separately for each of the original cases.  We will thus discuss them in turn

beginning with the case originally filed to 3:15cv35, which was Zorm 2009,

LLC (hereinafter "plaintiff") versus Jonathan Greenwald (hereinafter

"Defendant Greenwald" or "Greenwald").

**I.  Summary judgment motion in case originally docketed at 3:15cv35**

**Background of 3:15cv35**

The first case has its origins in a loan extended by Oritani Bank to a

business called HAC, II, LLC (hereinafter "borrower") on April 9, 2009.

(Doc. 34-3, Pl.'s Statement of Material Facts regarding case 3:15cv35

(hereinafter "SOF")  ¶ 1).[1]  The principal amount of the loan was $2 million.

(Id.)  The loan was to be repaid in accordance with a

Construction/Permanent Loan Note (hereinafter "note") dated April 9, 2009.

(Id.)  The borrower executed the note and delivered it to the Oritani Bank.

(Id.)

Defendant Greenwald served as a partner in and manager of HAC II.

HAC II acquired real estate located at 7/40 Melrose Street, Hazleton,

Pennsylvania to build an eight unit, fifty bed apartment building.  The

apartment building was intended to provide off campus housing for Penn

State University - Hazleton campus students.  (Doc. 43-1, Greenwald Aff. ¶

1).

A mortgage and security agreement dated April 9, 2009 (hereinafter

"mortgage") secures the loan in the principal amount of $2 million.  (SOF ¶

---

[1]These background facts regarding the underlying
loan/note/mortgage are generally agreed to and thus we will cite to the
plaintiff's statement of material facts.

4).   The mortgage encumbers the property located at 7/40 Melrose Street, Hazleton, PA.  (Id.)  Additionally, Defendant Greenwald executed a delivered a guaranty to Oritani Bank, under which Defendant Greenwald became a surety for all obligations, indebtedness and liabilities of the borrower to Oritani Bank under the note.  (SOF ¶ 5).[2]

The borrower defaulted on the note in May 2013.  (SOF ¶ 13).  Subsequent to the default, Oritani Bank, plaintiff, the borrower, Defendant Greenwald, Robert Maynard, HACAG, LLC and Maygreen Properties, LLC entered into settlement negotiations regarding the balance due on the loan.  (SOF ¶ 14).   These parties ultimately entered into a settlement agreement.  (Id.)  Pursuant to the agreement, Oritiani Bank assigned its interest in the

_____

[2]The guaranty provides:

> The Guarantor [Defendant Greenwald] hereby irrevocably and unconditionally guarantees to the Lender [Oritani Bank] the prompt payment when due, whether by acceleration or otherwise, of all present or future obligations or liabilities of any and all kinds of the Borrower to the Lender . . . including, but not limited to, certain obligations of the Borrower to the Lender evidenced by a certain Construction/Permanent Loan Note of even date herewith in the principal amount of $2,000,000.00[.]"

(SOF ¶ 8 (quoting the Guaranty)).

3

loan documents to Plaintiff Zorm.  (SOF ¶ 16).  Also, the property that was

subject to the mortgage was transferred from the borrower to plaintiff by

deed in lieu of foreclosure.  (SOF ¶ 19).

The settlement agreement provided the manner in which the value

the property would be appraised so that Defendant Greenwald could be

credited the fair market value of the property.  (SOF ¶¶ 20-21).  The

selection of the appraiser is at issue and will be discussed more fully

below.  Plaintiff had the property appraised and the appraised value

amounted to $1,750,000.  After this credit is applied, plaintiff alleges that

the balance due and owing under the personal guaranty is $1,082,271.38.

(SOF ¶ 32).

Plaintiff instituted the instant action seeking the money allegedly due

from Defendant Greenwald based upon the guaranty.  After discovery,

plaintiff moved for summary judgment in the amount of $1,082,271.38 plus

continuing interest at $527.78 per day from January 1, 2016, costs of suit

and attorney's fees.  (SOF ¶ 42; Doc. 34, Mot. for Summ. Jdgmt.).

Defendant Greenwald argues that he owes nothing because the

guaranty was no longer in effect at the time of the default.  Further, he

challenges the method with which plaintiff chose an appraiser for the

property.  The parties have briefed their respective positions and the

matter is ripe for disposition.

**Jurisdiction**

This court has jurisdiction pursuant to the diversity statute, 28 U.S.C.

§ 1332.  Plaintiff Zorm is a citizen of New Jersey.  (Doc. 1, Compl. ¶ 1).

Defendant Greenwald is a citizen of Florida. (Id. ¶ 2).[3]  Because complete

diversity of citizenship exists among the parties and the amount in

controversy exceeds $75,000, the court has jurisdiction over this case.

See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all

civil actions where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between . . . citizens of

different states[.]")  As a federal court sitting in diversity, the substantive

law of Pennsylvania shall apply to the instant case.  Chamberlain v.

Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tomkins,

304 U.S. 64, 78 (1938)).

**Legal standard**

Granting summary judgment is proper "'if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

---

[3]With regard to the case originally docketed to 3:15cv67, Defendant
Robert Maynard is a citizen of New York.  (Doc. 1 of 3:15cv67 ¶ 3).

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its

6

burden, the burden shifts to the nonmoving party, who must go beyond its

pleadings, and designate specific facts by the use of affidavits,

depositions, admissions, or answers to interrogatories showing that there

is a genuine issue for trial.  Id. at 324.

**Discussion**

Plaintiff moves for summary judgment on the basis that no questions

of material fact exist and Defendant Greenwald must pay them

$1,082,271.38 under the terms of the personal guaranty.  Defendant

Greenwald raises three arguments in opposition to the motion for summary

judgment.  First, he argues that he and the plaintiff modified the terms of

the personal guaranty to allow it to burn off, which it did.  Second, he

argues that the borrower, HACII, met the two requirements to burn off

Greenwald's personal guaranty before HAC II defaulted on the loan.

Finally, Defendant Greenwald argues that even if we find that the personal

guaranty is still in effect, summary judgment must be denied because

plaintiff incurably breached paragraph 14 of the settlement agreement

regarding the appraisal.  We will address these arguments in turn.

**A.  Personal guaranty**

As explained above, plaintiff bases its claim on Defendant

Greenwald's personal guaranty.  The parties do not dispute whether

7

Greenwald executed and delivered this guaranty to Oritani Bank, under

which he became a surety for all obligations, indebtedness and liabilities of

the borrower to Oritani Bank under the note.   Rather, Defendant

Greenwald argues that issues of fact preclude summary judgment because

the personal guaranty was later modified by agreement between himself

and plaintiff.  The modified terms allowed it to burn off, which it did.

For example, Greenwald points to the following evidence:  Leonard

Carlucci, Senior Vice President of Commercial Lending for Oritani Bank,

discussed the negotiations with his superiors and wrote to them as follows:

> Can we live with 5.875% with a fee of 3/8ths ($7,500)?  I received a lot of resistance at ½ point. Also Mr. Greenwald would like the guaranty to come off now that the loan is being permed out. Normally that would have been the case but the borrower didn't pick up on it when we approved and closed the loan.  He is more than aware now.  My recommendation would be to allow the guaranty to burn off after 12 months of satisfactory payments on the perm along with a minimum DSC of 1.30X at the time the guaranty would be released.  We would still have him on the hook for carve-outs.

(Doc. 43-6, Def. Greenwald's Ex. 6).

After his supervisors agreed (id.) Carlucci corresponded as follows to

Defendant Greenwald on July 7, 2010:

> Jonathan,
> They have agreed to lower your floor to 5.875% for a fee of 3/8ths ($7,500).  Please remit a

8

check to me in the amount of $7,500 and we will
have the loan converted.  I am hoping we can do
the conversion as of 7/1.  Worst case is that it will
occur on 8/1.  Please remember the first amortizing
payment is due the month following the conversion
so if I can back date this to 7/1 your first P&I
payment will be for 8/1.  We will also need to
establish a real estate tax escrow so please forward
to me the most recent tax bills that you have
received.

Regarding the guarantee, it will revert to just carve
outs once you have completed 12 consecutive
monthly payments in a satisfactory manner and
provided that the debt service coverage on the
property is at least 1.30x.

There may be a small legal fee necessary if I have
to use outside counsel for any documentation
changes or updates.

Thank you.
Len.
(Doc. 43-3, Defendant Greenwald's Ex. 3).

Accordingly, Defendant Greenwald argues that the guaranty had

been modified and, in fact, was no longer in effect at the time of the

default, thus he owes nothing.  Plaintiff counters that the guaranty can be

modified only by a signed writing.  Greenwald replies that the email

exchange amounts to a signed writing.

After a careful review, we agree with Greenwald and find that

genuine issues of material fact exist.  It appears that the email may indeed

9

be a writing signed by the Senior Vice President of Commercial Lending for Oritani Bank.  (Doc. 43-3, Defendant Greenwald's Ex. 3); 73 PA. STAT. § 2260.303(a)(b) (stating that a record or signature may not be denied legal effect or enforceability solely on the basis that it is in electronic form and a contract may not be denied legal effect solely because an electronic record was used in its formation). Thus, we find sufficient questions of fact to defeat plaintiff's initial position.

## B.  Requirements to burn off the personal guaranty

Next, Defendant Greenwald argues that plaintiff's summary judgment motion must be denied because the borrower met the two requirements to burn off Defendant Greenwald's personal guaranty before the borrower defaulted on the loan.  The two requirements are the completion of twelve consecutive monthly payments in a satisfactory manner and a debt service coverage on the property of at least 1.30x. (Doc. 43-3, Def. Greenwald's Ex. 3).

The parties appear to agree that twelve consecutive monthly payments were made.  (Doc. 43-7, Def.'s Ex. 7, email from plaintiff counsel to defense counsel indicating that "the twelve payments were made."). The only issue then is whether HACII achieved a debt service coverage ratio (hereinafter "DSCR") in excess of 1.3x.

10

Plaintiff presents a worksheet as an exhibit to establish that HAC II did not meet the relevant ratio.  (Doc. 36-13, Pl. Ex. I).  Defendant Greenwald, however, points to the deposition of the maker of the worksheet who indicates that he did not develop it to calculate a DSCR (Doc. 43-8, Richard Latrenta Dep. 57-58).  Additionally, Greenwald argues that the amount of the debt service number is inaccurate because it includes the escrow for the real estate taxes that were already deducted from the property's operations as reflected in the calculation of the numerator.  Based upon these arguments we have found that a genuine issue of material fact exits as to whether the DSCR was in excess of 1.3x.  Thus, summary judgment is in appropriate.

## C.  Plaintiff and the potential breaching of paragraph 14 of the settlement agreement

Finally, Defendant Greenwald argues that plaintiff violated the settlement agreement, specifically paragraph 14 relating to the appraisal, and therefore, summary judgment must be denied.  The settlement agreement provides that "the Parties shall mutually designate an agreed upon single appraiser who shall perform a valuation of the HAC II Property[.]"  (Doc. 36-19, Settlement Agreement, ¶ 14).  A review of the parties' briefs on this matter indicates that a question of fact exists

regarding the appraisal and appraisers.

Greenwald has presented evidence that the conversations with regard to picking an appraiser stalled and then plaintiff merely picked one itself.  Plaintiff argues that after it informed defendant of its choice of appraiser, defendant never objected or requested that an alternate appraiser be used.  Clearly, questions of fact exists regarding the choice of the appraiser and whether it was done in a way that comports with paragraph 14 of the settlement agreement.  Thus, denying summary judgment would be appropriate on this basis also.

**Conclusion regarding the case originally filed at 3:15cv35**

For the reasons set forth above, we find that many genuine issues of material fact exist with regard to the loan documents at issue and actions of the parties.  Accordingly, the plaintiff's motion for summary judgment with regard to the case originally docketed to 3:15cv35 will be denied.

**II.  Summary judgment motion in the case originally docketed at 3:15cv67**

We now move on to the second motion for summary judgment.  The one filed to the case originally docketed at 3:15cv67.

**Background of 3:15cv67**

The factual background of the case docketed at 3:15cv67 is much

12

the same as the factual background discussed above regarding 3:15cv35.

The difference is the second action involves a different property and is an

action in confession of judgment, rather than an action against Defendant

Greenwald with respect to the guaranty.  Additionally, another defendant,

in addition to Jonathan Greenwald, is present in this portion of the case,

Defendant Robert Maynard.

On April 28, 2008, Oritani Bank extended a loan to HACAG, LLC

(hereinafter "borrower") with a principal amount of $1,920,000.00.  (Doc.

36-3, Pl.'s Statement of Facts regarding 3:15cv67 (hereinafter "SOF2") ¶

1).  The loan was a commercial loan regarding property that Defendants

Greenwald and Maynard intended to run as a student housing facility.

(SOF2 ¶ 5). The loan is evidenced and is to be repaid in accordance with a

mortgage note dated April 28, 2009 in that same amount, which was

executed and delivered to Oritani Bank by the borrower.  (SOF2 ¶ 1).

Defendant Greenwald executed the note on behalf of the borrower.  (SOF2

¶ 2).

The loan, in turn, is secured by a mortgage and security agreement

(hereinafter "mortgage") also dated April 28, 2008.  (SOF2 ¶ 4).  On that

same date, defendants executed and delivered to Oritani Bank a guaranty

under the terms of which defendants became the unlimited and

13

unconditional sureties for all obligations, indebtedness and liabilities of the

borrower as to Oritani Bank under the note.  (SOF2 ¶ 6).  The guaranty

provides as follows:

> The Guarantor hereby irrevocably and
> unconditionally guarantees to the Lender the
> prompt payment when due, whether by acceleration
> or otherwise, of all present or future obligations or
> liabilities of any and all kinds of the Borrower to the
> Lender . . . including, but not limited to, certain
> obligations of the Borrower to the Lender evidenced
> by a certain Mortgage Note of even date herewith in
> the principal amount of $1,920,000.00 . . .

(Doc. 36-12, Pl. Ex. H, Guaranty at § I).

The borrower defaulted on the Note and Mortgage by failing to make

payments in November 2012, December 2012 and January 2013.  (SOF2 ¶

14).  Subsequent to the default, the parties entered into a settlement

agreement.  (SOF2 ¶¶ 16-17).  Under the terms of the settlement

agreement, the loan documents were assigned from Oritani bank to the

plaintiff.  (SOF2 ¶ 18).  Under the terms of the settlement agreement, the

property was transferred from the borrower to plaintiff by deed in lieu of

foreclosure.  (SOF2 ¶ 21).  The settlement agreement provides that the

defendants will be entitled to a credit for the fair market value of the

property and the value of the property can be determined by an appraisal

of the property performed pursuant to paragraph 11 of the agreement.

(SOF2 ¶¶ 23-24).

Plaintiff had the property appraised and alleges that the defendants owe the following:

| | |
|---|---|
| Principal | $1,802,918.79 |
| Late Fees | $ 16,669.56 |
| Interest through 1/1/16(10%) | $594,461.47 |
| Prepayment fee (3%) | $54,087.56 |
| Other fees | $85,758.02 |
| Escrow | $5,796.51 |
| Operating Costs | $331,645.00 |
| Subtotal | $2,891,336.91 |
| Less credit for value of property | $2,085,000.00 |
| Total: | $806,336.91. |

(SOF ¶ 34).

On January 9, 2015, plaintiff filed a complaint for confession of judgment against Defendants Greenwald and Maynard.  (Docket No. 3:15cv35, Doc. 1)  On January 12, the court entered judgment against Greenwald and Maynard for $958,539.64, in addition to continuing interest at $500.81 per day, as well as attorneys' fees, costs, and 10% interest pursuant to paragraph 22 of the Settlement Agreement.  (Id. Doc. 3).

On February 19, 2015, Defendant Greenwald filed a motion to strike the judgment, or in the alternative, open the judgment.  (Id. Doc. 8).  On March 10, 2015, Defendant Maynard also filed a motion to strike and/or open judgment.  (Id. Doc. 12).  On August 4, 2015, the court granted the motions and opened the judgments.  (Id. Doc. 25).   The defendants then

15

answered the complaint.  (Id. Docs. 26 & 29).  Defendant Greenwald then filed a motion to consolidate case number 3:15cv67 with case number 3:15cv35.  (Id. Doc. 27).  The other parties agreed and the court consolidated the two cases into case number 3:15cv35.  The court then held a case management conference and the parties engaged in discovery.  At the end of discovery, the plaintiff filed the instant motion for summary judgment.  (Doc. 36).  The motion is now ripe for disposition.

Plaintiff's motion raises the following two issues: 1) should summary judgment be granted to plaintiff where defendants failed to guaranty the borrower's obligation to make payment when due under the loan documents; and 2) Should summary judgment be granted to plaintiff where defendants have not proven their affirmative defenses?   We will address these issues separately.

## A.  The guaranty

The first issue the plaintiff raises involves the defendants' guaranty. Plaintiff avers that judgment in its favor is appropriate because the borrower failed to make payment on the loan which the defendants personally guaranteed.  Thus, under the guaranty, the defendants are now liable for all amounts owing by the borrower according plaintiff.

Our analysis is similar to that above with regard to the case originally

16

docketed to 3:15cv35.  Questions of fact exist as to whether the guarantees were still in effect at the time of default.

For example, Defendant Maynard has evidence that the Leonard Carlucci, Oritani Bank's Senior Vice President of Commercial Lending, indicated that the "personal guarantees had already burned off."  (Doc. 40-1, Maynard Ex. A, Greenwald Dep. at 16).  The guarantees were no longer in effect because HACAG had made twelve consecutive monthly payments in a satisfactory manner and had achieved a certain DSCR.  (Id. at 41-42).  Carlucci made the same representations to Defendant Maynard.  (Doc. 40-2, Maynard Ex. B, Maynard Dep. at 36).  Additionally, Carlucci informed other Oritani Bank executives that the loan was not guaranteed.  (Doc. 40-4, Maynard Ex. D, Carlucci e-mail).

Moreover, the guaranty provides that oral modifications are not allowed.  Questions of fact appear as to whether the plaintiff waived the enforcement of this prohibition.  For example, Meridian Capital Group wrote to Defendant Greenwald that the lender, Oritani, had agreed to modify the loan with no recourse, that is without a personal guarantee.  (Doc. 41-15, Def. Maynard Ex.15).

Thus, genuine issues of material fact exist as to whether the guaranties were still in effect at the time of the default and summary

17

judgment is inappropriate.

**B. Affirmative defenses**

Plaintiff also raises the issue of whether defendants' affirmative defenses preclude summary judgment or not. This topic includes the following three issues, whether the defendants were released from their liability under the guaranty; whether plaintiff acted in good faith in connection with the settlement negotiations; and whether plaintiff complied with the terms of the agreement. We will address these issues separately.

**1. Were defendants released from the liability under the guaranty**

As an affirmative defense to plaintiff's cause of action, Defendant Greenwald argues that to the extent that he ever had a personal guaranty relating to the mortgage, it was removed. (Doc. 26, Greenwald Ans. to Compl. ¶¶ 34-41). Plaintiff argues that this affirmative defense fails. The arguments are the same as raised above with regard to the personal guaranty. We have already decided that questions of fact exist as to whether the personal guaranty had been removed. For the reasons set forth above, plaintiff's arguments here are likewise unconvincing.

**2. Good faith negotiations with regard to the settlement agreement.**

18

Defendant Greenwald's affirmative defenses also assert that plaintiff acted in bad faith and with willful intent to interfere with Greenwald's efforts to stabilize the property.  (See, e.g., Doc. 26, Greenwald Ans. to Compl. ¶ 82).  This issue is rife with questions of fact and in light of denying summary judgment to the plaintiff, we need not discuss it further.

### 3.  Did plaintiff comply with the terms of the agreement

Defendant Greenwald's affirmative defenses also raises the issue of whether plaintiff violated the Settlement Agreement with regard to the appraisers.  As noted above, questions of fact are present with regard to plaintiff's appraisal of the first property.  Similar questions of fact are present with regard to the second property.

## C.  Defendant Maynard's Counterclaim

Defendant Maynard's answer contains a counterclaim against plaintiff that asserts a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.  (Docket No. 3:15cv67, Doc. 29, Maynard Ans. to Compl. foll. ¶ 54).  Plaintiff moves for summary judgment on the UTPCPL claim.  Subsequent to the filing of the summary judgment motion, however, the court dismissed the UTPCPL claim from Defendant Maynard's counterclaim.  (Doc. 49, Ord. of May 17, 2016).  Accordingly, this portion of the summary judgment motion will be denied as moot.

19

**Conclusion**

As set forth above, questions of fact exists with regard to, *inter alia*, the personal guaranties and whether plaintiff violated the settlement agreement with regard to the appraisal process.  Indeed, the majority of the parties' briefs are addressing the factual questions, rather than legal disputes.  Plaintiff's motion for summary judgment will thus be denied.  An appropriate order follows.

**Date: Sept. 8, 2016**            **s/ James M. Munley**
                                   **JUDGE JAMES M. MUNLEY**
                                   **UNITED STATES DISTRICT COURT**