# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZORM 2009, LLC, | : | 3:15cv35 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| JONATHAN GREENWALD, | : | |
|     Defendant | : | |

## MEMORANDUM

This matter consists of two consolidated cases, 3:15cv35 and 3:15cv67. Each case deals with whether Defendant Jonathan Greenwald owes sums of money to plaintiff, Zorm 2009, LLC, under personal guaranties that he signed involving two mortgages. The consolidated cases now come before the court for decision following a non-jury trial held on February 7th and 8th, 2017. The following memorandum includes our findings of fact and conclusions of law. See FED. R. CIV. P. 52(a)(1)

## Background

Plaintiff filed lawsuits regarding personal guaranties on two mortgages. The parties refer to the two mortgages/loans as the HACAG loan and the HAC II loan. Specifically, plaintiff started the action involving the HACAG loan with a "complaint in confession of judgment" filed on January 1, 2015 against Greenwald and Robert Maynard. (Doc. 1,

3:15cv67). Pursuant to the confession of judgment complaint, the court entered judgment in favor of plaintiff in the amount set forth in the complaint, $958,539.64. (Doc. 5, 3:15cv67, Judgment).

Defendant Greenwald then filed a motion to strike the judgment or in the alternative, open the judgment. (Doc. 8, 15cv67). The court granted the motions to strike and/or open judgment and directed the clerk of court to reopen the case. (Doc. 25, 15cv67, Ord. of Aug. 4, 2015). The defendants answered the case and Defendant Greenwald moved to consolidate this case with 15cv35, which deals with the HAC II loan. (Doc. 27) The other parties concurred in the motion. (Id.) The court consolidated the cases on August 18, 2015. (Doc. 28, 15cv67, Ord. on Mtn. to Consol.)

Plaintiff started the HAC II lawsuit by filing a complaint on January 5, 2015 against Defendant Jonathan Greenwald and Robert Maynard. (Doc. 1). The defendants answered the case and as noted above, the court consolidated the HAC II case with the HACAG case. The parties then went through a period of discovery.

Subsequently, the parties filed motions for summary judgment, which the court denied on September 8, 2016. (Doc. 52). The court held a

two-day non-jury trial, commencing on February 7, 2017. After the completion of the transcript, the parties filed proposed findings of fact and conclusions of law, bringing the case to its present posture.

**Legal standard**

Plaintiff has the burden of proving its case by the preponderance of the evidence. That means plaintiff has to prove, in light of all the evidence, that what it claims is more likely so than not so. Greenwich Collieries v. Director, Office of Workers' Comp., 990 F.2d 730, 736 (3d Cir. 1993). Defendant has the burden of establishing his affirmative defenses. Moore v. Kulicke & Soffa Indus., Inc., 318 F.3d 561, 566 (3d Cir. 2003).

In determining whether any fact has been proved by a preponderance of evidence in the case, we have considered the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who produced them.

Defendant Greenwald's defense to the lawsuits is that the respective personal guarantees were no longer in effect at the time that lawsuits were filed. Thus, he personally, is not liable for any damages. We will address the guarantees separately beginning with the HAC II loan the case originally docketed at 3:15cv35.

**I. The case originally docketed at 3:15cv35, HAC II**

The first case has its origins in the HAC II loan extended by Oritani Bank to a business called HAC, II, LLC (hereinafter "borrower") on April 9, 2009. (Doc. 78-1, Exh. A, Court Exh. 1, Statement of Stipulated Facts Agreed to by Counsel, (hereinafter "Stip.") at ¶ 1). The principal amount of the loan was $2 million. (Id.) A construction/permanent loan note governed the repayment of the loan (hereinafter "HAC Note"). Defendant Jonathan Greenwald executed the HAC Note on behalf of HAC II. (Id.) A mortgage and Security Agreement secured the HAC Loan and encumbered property located at Melrose Street in Hazleton, PA (hereinafter "Melrose Property"). (Id. ¶ 2).[1]

Additionally, Defendant Greenwald executed and delivered a guaranty to Oritani Bank, under which Defendant Greenwald became a surety for all obligations, indebtedness and liabilities of the borrower to

---

[1] Defendant Greenwald served as a partner in and manager of HAC II. HAC II acquired real estate located at 7/40 Melrose Street, Hazleton, Pennsylvania to build an eight unit, fifty bed apartment building. The apartment building was intended to provide off campus housing for Penn State University - Hazleton campus students. (Doc. 43-1, Greenwald Aff. ¶ 1).

4

Oritani Bank under the note. (Id. ¶ 3).[2] The borrower defaulted on the note in May 2013.[3] (Id. ¶ 4).

The parties do not dispute that originally, a personal guaranty was included in the HAC II loan. The parties, however, modified the HAC II loan. We find that the modifications made by the parties allowed the personal guaranty to "burn off" if certain conditions were met. We find that

---

[2]The guaranty provides:

> The Guarantor [Defendant Greenwald] hereby irrevocably and unconditionally guarantees to the Lender [Oritani Bank] the prompt payment when due, whether by acceleration or otherwise, of all present or future obligations or liabilities of any and all kinds of the Borrower to the Lender . . . including, but not limited to, certain obligations of the Borrower to the Lender evidenced by a certain Construction/Permanent Loan Note of even date herewith in the principal amount of $2,000,000.00[.]"

(SOF ¶ 8 (quoting the Guaranty)).

[3]After the HAC II and HACAG defaulted, the parties entered into a settlement agreement regarding the loans with an effective date of November 18, 2013. (Id. ¶ 10). Under the settlement agreement, Oritani assigned all the HAC II and HACAG loan documents to plaintiff Zorm 2009, LLC. (Id. ¶ 11). Additionally, the real property encumbered by the loan documents was transferred to plaintiff by deed in lieu of foreclosure. (Id. ¶ 12). The settlement agreement provided the manner in which the value the property would be appraised so that Defendant Greenwald could be credited the fair market value of the property. The selection of the appraiser is at issue and will be discussed more fully below if necessary.

the conditions were met and the personal guaranty was no longer in effect at the time the lawsuit was filed.

The background with regard to this "burn off" is as follows: The property was doing well, and the defendant had the opportunity to sell the property, refinance with another lender or modify the loan with the bank for better terms. (N.T. 2/8, 128). The parties decided to modify the loan terms. Leonard Carlucci, the bank's Senior Vice President - Commercial Lending, confirmed to the senior loan officer of Meridian Capital, which assisted in the negotiations, that any modification of the HAC II Loan would be non-recourse. (Ex. 14, email dated Mar. 4, 2010). DePasquale then informed Greenwald that a modification of the HAC II Loan would be non-recourse. (Ex. 15). Subsequently, Meridian dropped out of the negotiations and Greenwald and Carlucci directly negotiated the modification. (N.T. 2/8/17 at 129).

Under the terms of the modification that the parties eventually agreed to, the personal guaranty would revert to just carve-outs once twelve (12) consecutive payments were made in a satisfactory manner and the debt service coverage ration (DSCR) on the property achieved 1.30x. (Ex. 18). The DSCR is a measurement of an asset's ability to pay the loan principal

and interest. (N.T. 2/8 at 68). "The DSCR of 1.3x would run concurrently with the twelve monthly payments." (N.T. 2/8/17 at 30).

Greenwald agreed to the loan modification terms and paid a $7,500.00 modification fee to the bank. (Ex. 19). Then the bank modified the loan payments effective July 1, 2010 to reflect a lower interest rate that the parties had negotiated. (Ex. 20).

Subsequently, HAC II satisfactorily made twelve (12) consecutive monthly payments. (N.T. 2/8/17, 70-71). Defendant Greenwald established at trial that the DSCR for the burn off period was greater than 1.30x. (Ex. 80, N.T. 2/8 at 139-144). Thus, by June 2011, HAC II had satisfied the two requirements for burning off defendant's personal guaranty, and no personal guaranty bound Defendant Greenwald to pay the bank at the time of the HAC II default in May 2013. The court will thus enter a defense verdict regarding the HAC II loan.

**II. The case originally docketed at 3:15cv67, HACAG**

The history of the second loan at issue, the HACAG loan, is similar to the history of the first. Defendant Greenwald and other investors formed HACAG, LLC (HACAG) to purchase student housing property located near the Penn State University - Hazleton Campus, more specifically at 22 Faith

Drive, Hazleton. (N.T. 2/7/17 at 112). Defendant Greenwald served as the managing member of the organization. (N.T. 2/7/17 at 115). The property is known as "High Acres Commons." (F.N. - N.T. 2/7 /17 at 112).

Greenwald again dealt primarily with Senior Vice President - Commercial Lending Len Carlucci regarding financing from Oritani Bank. (N.T. 2/7/17 at 114-115). Ultimately, on April 28, 2008, Oritani Bank extended a one million nine hundred twenty thousand dollar ($1,920,000) loan to an entity called HACAG. (Doc. 78-1, Exh. A, Court Exh. 1, Statement of Stipulated Undisputed Facts Agreed to by Counsel, (hereinafter "Stip.") at ¶ 5).[4] A mortgage note governed the repayment of the loan. Defendant Jonathan Greenwald executed the HAC Note on behalf of HAC II. (Id.) A mortgage and Security Agreement secured the HAC Loan and encumbered the Faith Drive property. (Id. ¶ 6).

Defendant Greenwald and Co-Defendant Robert Maynard also executed a guaranty (hereinafter "HACAG Guaranty") under which they "became unlimited and unconditional sureties for all obligations, indebtedness and liabilities of HACAG under the HACAG Note. (Id. ¶ 8).

---

[4]Prior to extending the loan, the bank obtained an appraisal for the property which valued it at $2,250,000. (N.T. 2/7/17 at 116; Ex. 5). As explained in note 3, as part of the settlement agreement, after the default, the property was turned over to the bank.

8

HACAG defaulted on the HACAG Note in December 2012. (Id. ¶ 9). Plaintiff seeks a judgment against Defendant Greenwald under the guarantee. The language of the guaranty provides as follows: "The guarantor hereby irrevocably and unconditionally guarantees to the Lender the prompt payment when due, whether by acceleration or otherwise, of all present or future ..." (Exh. 54).

Evidently, the property initially did well, and HACAG had the opportunity to sell the property, refinance with another lender or modify the loan terms with the Bank in March 2010 when the property was doing well and was more valuable. (N.T. 2/7/17, 126). The parties decided to refinance the loan. Carlucci again was involved in the deal. (Id.) Meridian Capital acted as the broker during negotiations. (Id.) On March 4, 2010, in an email, Carlucci confirmed to the Emil DePasquale, senior loan officer of Meridian that any modification to the HACAG Loan would be "non-recourse", which means no personal guaranty. (Id. 125-26, Carlucci Tr. at 19; Ex. 18, Email dated March 4, 2010). Then in a letter dated March 12, 2010, DePasquale informed Defendant Greenwald that a modification of the loan would be non-recourse. (Ex. 15). Ultimately, however, instead of modifying the HACAG Loan, the parties decided on a second mortgage

9

that would expire at the same time as the first. (N.T. 2/7/17 at 127). Notably, the bank did not require a personal guaranty on the second mortgage. (Id.)

Eventually, however, the property's financial situation took a turn for the worse, and the borrower defaulted in December 2012. The question we are presented with is whether the personal guaranty on the original mortgage burned off by the time of the default.

We find that the guaranty had burned off and the evidence of such is as follows: During discussions of the HAC II project, Carlucci informed Defendant Greenwald that the HACAG personal guaranty had burned off because HACAG had made twelve consecutive monthly payments in a satisfactory manner and had achieved the required debt service coverage ratio. (N.T. 2/17/17). Additionally, during the negotiations mentioned above regarding modifying the HACAG loan, Carlucci indicated to the senior loan officer of Meridian Capital that any modifications of the HACAG loan would be non-recourse, which means no personal guaranty (Ex. 14, N.T. 2/7/17 at 125). The loan officer then informed defendant that any modification of the HACAG loan would be non-recourse. (Ex. 15). An email to Thomas Guinan, the bank's Executive Vice President/Chief

Lending Officer, from Carlucci states that the HACAG mortgage and second mortgage, "are not guaranteed beyond carve outs." (Ex. 24). The email also suggests bringing defendant on as a personal guarantor, thus indicating that he was not at that time already a personal guarantor. (Id.)

Latrenta drafted a memo regarding the HACAG loan on January 2, 2013 in which he admitted, "[i]n addition to the property there are the limited guarantees of the managing member, [Defendant] Jonathan Greenwald as it pertains to 'bad boy carve outs'." (Ex. 78). Bad boy carve out guarantees are not the types of guarantees that plaintiff is trying to enforce. Rather, they evidently apply when the guarantor commits gross negligence or acts with criminal intent.

Plaintiff argues that the personal guaranty could not have been removed from the HACAG loan because no writing provided for such a modification, and the contract did not provide for oral modification. We find plaintiff's argument unpersuasive. The law provides: "Parties may orally agree to modify a written contract, even where the written contract contains language prohibiting oral modifications." MDNet, Inc. v. Pharmacia Corp., 147 Fed. Appx. 239, 243 (3d Cir. 2005) (citing Universal Builders, Inc. v. Moon Motor Lodge, Inc., 244 A.2d 10, 15 (1968); C.I.T. Corp. v. Jonnet,

214 A.2d 620 (1965)). Such an oral modification of contract must be proven by clear and convincing evidence. First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co., 824 F.2d 277, 281 (3d Cir. 1987).

We find, based upon the evidence discussed above, that clear and convincing evidence establishes that "(1) Plaintiff waived the requirement that the personal guaranty could only be modified by a written agreement and that (2) Plaintiff removed the guaranty.

Even if we had not found clear and convincing evidence that the parties had modified the terms of the guaranty, which ultimately led to its removal, we would nonetheless find in favor of the defendant on the basis of promissory estoppel.

Pennsylvania law defines promissory estoppel as: "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc., 636 A.2d 156, 160 (Pa.1994) (quoting RESTATEMENT (SECOND) CONTRACTS § 90(1)). Here, the facts, as set forth above, establish that the plaintiff indicated that the guaranty would

be or had been removed. Plaintiff did this while in negotiations with the defendant, and in seeking to keep his business and do further business with him. Accordingly, promissory estoppel would prevent the plaintiff from changing its mind after defendant suffered a financial setback.

Accordingly, for all of these reasons we will find in favor of defendant on the HACAG loan. An appropriate verdict will issue.

Date: **August 17, 2017**    **s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**